IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) |
| v. | )<br>) Criminal No. 12-147 (2)<br>) |
| SEAN MOFFITT | ) |

## OPINION

Presently before the Court is Defendant Sean Moffitt's "Renewal of Motion for Judgment of Acquittal" in which he seeks judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons that follow we will deny Defendant's motion.

Following a jury trial the Defendant was found guilty of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846, and with attempt to commit the crime of possession with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. This case involved a sting operation wherein an undercover agent proposed to Defendant and others that they participate in a home invasion robbery in order to steal cocaine from other drug dealers.

Mr. Moffitt argues that there was no evidence presented to establish the existence of a meeting of the minds between Mr. Moffitt and anyone regarding the proposed robbery of drugs from a stash house. Mr. Moffitt explains that while there was ample evidence to establish that co-defendant Edward Harris and the undercover agent had entered into an agreement, all the government was able to show at trial regarding Mr. Moffitt was that he was present at a meeting on May 2, 2012, and at a lunch meeting on May 3, 2012. Mr. Moffitt suggests that the jury may have found him guilty based merely on Mr. Moffitt's passive presence at these meetings.

Defendant also argues that there was insufficient evidence to establish the charge of attempt to possess with intent to distribute 5 kilograms or more of cocaine. Specifically, he argues that the government produced no evidence that Mr. Moffitt took a substantial step towards the commission of the attempt charge or acted in any way to attempt to possess the cocaine. In addition, he argues that Pinkerton liability would not apply because, as he argued with regard to the conspiracy charge, the evidence to establish Mr. Moffitt's involvement in the conspiracy was insufficient. We first address his request for acquittal, followed by his request for a new trial.

## I. Renewed Motion for Judgment of Acquittal

In considering a motion for judgment of acquittal, the Court "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." United States v. Gatlin, 613 F.3d 374, 380 (3d Cir.2010) (internal quotation marks omitted). "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." United States v. Starnes, 583 F.3d 196, 206 (3d Cir.2009) (internal quotation marks omitted). A finding of insufficiency should be "confined to cases where the prosecution's failure is clear." United States v. Smith, 294 F.3d 473, 477 (3d Cir.2002). The Court may not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir.2005).

Mr. Moffitt's argument focuses on the lack of evidence of Mr. Moffitt's involvement in the conspiracy in comparison to the numerous pieces of evidence showing his co-defendant

Mr. Harris's involvement in the conspiracy. He notes that the evidence shows that his primary involvement was his presence at the initial meeting on May 2, 2012, at which no agreement was struck; and his presence at the lunch meeting on May 3, 2012, at which Mr. Harris engaged in significant discussions with the undercover agent regarding the plan to rob the stash house. In contrast, Mr. Moffitt argues that there was no evidence of any substantive actions after the initial meeting; no evidence of any substantive telephone conversations between Mr. Moffitt and the undercover agent; and no evidence of additional planning between Mr. Moffitt and anyone else. Mr. Moffitt also points out that he did not appear for the meeting when the robbery was supposed to take place on May 9, 2012. Finally, he supports his position with the fact that even after Mr. Harris was arrested Mr. Moffitt continued to refuse to meet with Mr. Harris or the undercover agent.

Of course there was other evidence introduced at trial regarding Mr. Moffitt's involvement in the conspiracy. The undercover agent testified at trial regarding the lunch meeting on May 3, 2012. That evidence showed that Mr. Moffitt asked questions about the location of the stash house and also stated that they would come with "weapons of mass destruction" to help carry out the robbery. Mr. Moffitt attacks the evidence of the comment he allegedly made about weapons of mass destruction as not being audible on the recording, and in any event was made in the context of a joke.

The government also introduced evidence from a former colleague of Mr. Harris's, Thomas Dailey, who testified that he was present when Mr. Harris made a telephone call to someone he called "Cowboy" to inform him that the robbery would take place the next day. Other evidence showed that Mr. Moffitt sometimes went by the nickname "Cowboy." Mr.

3

Moffitt attacks this evidence as not credible because of other evidence introduced to show that police records and reports that failed to indicate that Mr. Harris referred to a "Cowboy."

The government also introduced circumstantial evidence showing somewhat broad geographic areas where Mr. Moffitt's cell phone number had contact with specific cell phone towers throughout the day of the planned robbery on May 9, 2012 (and at other dates and times). Mr. Moffitt attacks this evidence as being incompetent and unreliable, and not based on sufficient knowledge or expertise on the part of the government's witness, and was unfairly prejudicial. To the extent the cell phone evidence of his whereabouts on May 9, 2012 could be deemed reliable, Mr. Moffitt argues that it showed that he had nothing to do with the plan involving Mr. Harris and the undercover agent.

The government also introduced evidence from an ATF agent who, along with a colleague, interviewed Mr. Moffitt on May 15, 2012 about his knowledge of, and involvement with, the plan to rob a stash house after May 9, 2012. This evidence tended to support that Mr. Moffitt was involved in the conspiracy. Mr. Moffitt attacks the evidence as unreliable in light of the length of time since the interview had occurred, the fact that the agents failed to take notes during the interview, and that the report of the interview was not prepared until two weeks after it occurred.

Mr. Moffitt's attacks on the evidence as set forth above are insufficient to support a motion for judgment of acquittal when we view the evidence in a light most favorable to the government. The jury was entitled to decide what Mr. Moffitt said at the lunch meeting and what importance to give the testimony. It was also the province of the jury to determine the credibility of Mr. Dailey, the ATF agent, and Mr. Moffitt.

We also disagree with Mr. Moffitt that the cell phone tower evidence was incompetent and unreliable. The witness who testified clearly circumscribed his testimony as to what he knew and what he didn't know and he quite reasonably did not attempt to offer any conclusions beyond the evidence he presented. Briefly, he testified about the geographic location of several cell phone towers and the number of times that information (of some sort) was sent by a particular cell phone number and received by a particular cell phone tower over a certain period of time. This evidence provided circumstantial evidence that Mr. Moffitt was approaching or nearby the area where the robbery was to take place around the time frame of the robbery. This evidence also provided circumstantial evidence that Mr. Moffitt rarely was in this area – that is, that his cell phone number rarely made contact with the cell phone towers in that area, but on that date it made numerous contacts.

As already noted, the burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high. Gatlin, 613 F.3d at 380. Mr. Moffitt's attacks on the evidence do not show that the "prosecution's failure is clear." Starnes, 583 F.3d at 206. Given the evidence introduced at trial, we find that a rational juror could have concluded that Mr. Moffitt knowingly was a party to or member of the conspiracy charged in Count 1, and had the requisite intent to achieve the conspiracy's objective. Based on the evidence establishing that Mr. Moffitt was a member of the conspiracy, we further find that a rational juror could have concluded that Mr. Moffitt was also guilty of the attempt charged in Count 2. Accordingly, Mr. Moffitt's renewed motion for judgment of acquittal (ECF No. 159) is hereby DENIED.

## II. Motion for a New Trial

In the alternative, Mr. Moffitt seeks a new trial pursuant to Federal Rule of Criminal Procedure 33, for the same reasons in support of his motion for acquittal.

"Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir.2002). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted."'" Id. (quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir.1994), quoting United States v. Morales, 902 F.2d 604, 606 (7th Cir.1990)). We cannot say that the verdict was against the weight of the evidence.

The government's theory of the case was that Mr. Moffitt, along with Mr. Harris, not only intended to rob the stash house, but also intended to steal the cocaine found in the stash house from the undercover agent (rather than splitting it with him as planned). The government did not shy away from the fact that Mr. Moffitt was not as involved as Mr. Harris or did not show up on the date of the planned invasion. Instead, the government introduced evidence to show, inter alia, that Mr. Harris and Mr. Moffitt had a close personal relationship, that Mr. Harris immediately contacted Mr. Moffitt to inform him that the next day was the planned robbery, and that on the day of the planned robbery Mr. Moffitt was in the area where

the robbery was to occur. This is some, but not all, of the evidence the government introduced at trial.

In contrast, Mr. Moffitt's position was that he was wary of the undercover agent from the beginning, suspecting that he was an aggrieved low-level criminal who wanted revenge against someone who had wronged him in a drug deal. He testified that he never joined the conspiracy and that he urged Mr. Harris not to get involved with the undercover agent. He further explained that he went to the lunch meeting because it was going to be a free lunch, and he emphasized that he was not involved in the planning of the robbery at that meeting. He noted his lack of contacts with the undercover agent and explained his presence near the robbery location as being related to a visiting a relative. The jury could have, but did not, conclude that Mr. Moffitt was not involved in the conspiracy and attempt to possess the cocaine.

There is no doubt that this was a difficult case for the jury to consider. Counsel for both sides did an excellent job of focusing the jury's attention on relevant evidence. In its wisdom the jury returned a verdict of guilty. In light of all the evidence and testimony we conclude that the jury's verdict was not against the weight of the evidence. Accordingly, Mr. Moffitt's motion for a new trial (ECF No. 159) is hereby DENIED.

July 15, 2013
Date

Maurice B. Cohill, Jr.
United States District Judge